Next up is 525-0563, People v. Duncan, and counsel for the appellant, Ms. O'Brien? Yes, Your Honor. And on behalf of the employee, Mr. Sullivan? Yes, Your Honor. Counsel, are you ready to proceed then? Yes. All right. For the appellant, please. Thank you. Good morning, Your Honors, counsel, and may it please the Court. My name is Valerie Osment O'Brien, and I represent the State in this matter, the people of the State of Illinois v. Antron D. Duncan. The State's argument is fairly straightforward in this case. In July of 2024, the State charged the defendant with first-degree murder, alleging that, on December 1, 2023, the defendant, without lawful justification and with the intent to kill or do great bodily harm, shot Joseph Hudson in the back with a firearm, causing his death. The State's theory of the case was that the defendant was Hudson's drug dealer and that Hudson owed the defendant money for cocaine and that this unpaid debt provided motive for the defendant's killing of him. Therefore, in support of this theory, in June of last year, the State filed a notice of intent to introduce evidence of other crimes, wrongs, or acts seeking to introduce the following evidence. First, that the defendant was charged with unlawful possession with intent to deliver a controlled substance in Case No. 2025-CF988 and that in the course of executing a search warrant on the defendant's home, the Illinois State Police recovered 36.9 grams of cocaine. Second, that the defendant was charged with one count of unlawful possession with intent to deliver a controlled substance and two counts of unlawful delivery of a controlled substance in Case No. 2023-CF1075 and that during the execution of a search warrant on the defendant's home, the St. Clair County Drug Tactical Unit recovered 58.1 grams of cocaine from the kitchen cabinet and master bedroom toilet, 0.9 grams of cocaine from the defendant's vehicle, over $2,000 in cash, multiple firearms, a digital scale, and packaging material. Also, during an interview with the tactical unit, the defendant admitted to them that he sometimes sells crack cocaine. Third, that the defendant was convicted of unlawful possession of a controlled substance in Case No. 2017-CF987 for knowingly possessing less than 15 grams of a substance containing cocaine. Fourth, that the defendant was convicted of murder in Case No. 1998-CF751. The murder took place at a known drug house and a witness provided a statement to the police that the defendant was selling drugs out of that house. And finally, No. 5, that the defendant was convicted of unlawful possession with intent to deliver a controlled substance in Case No. 1995-CF302 after being found asleep in the driver's seat of his car with a plastic bag containing 128 pieces of crack cocaine in his hand. The State argued at the hearing that this other crimes evidence was critical to explaining the motive for the presently charged crime and that the defendant's history of drug dealing furnishes a backstory that makes the immediate evidence of the charged crime coherent and understandable. At the hearing, the State reiterated that the other crimes evidence was necessary to establish the relationship between the defendant and the victim and to explain the defendant's motive for murdering the victim. The State further argued that without this evidence of the defendant's prior history of drug dealing, the jury would be left wondering why the defendant was at the victim's house at 2.30 in the morning, making the State's theory implausible or perhaps even inexplicable. Additionally, the State emphasized that the defendant's statement in No. 23-CF1075, where he told the drug trafficking unit that he sells cocaine and that he was fronted the money for the cocaine and has to pay it back. The State argued that this admission went directly to its theory in this case of motive, that when the victim failed to pay the defendant, the defendant could not repay his own debt, leading him to kill the victim. The State stressed that introducing the defendant's statement was crucial to establishing its motive in this case. Of course, defense counsel objected, arguing that the evidence of the defendant's prior conduct and convictions would be highly prejudicial and that no jury instruction would be sufficient to cure such prejudice. Thereafter, the trial court largely denied the State's motion. Regarding the defendant's June 2025 charge for unlawful possession with intent to deliver a controlled substance, the trial court permitted limited use of this evidence, ruling that the State could introduce evidence that a search warrant was executed in what was found, but it could not mention that the defendant had been charged as a result. The trial court also permitted testimony from a qualified officer that, based on experience, the quantity of drugs found was indicative of drug dealing, and the trial court indicated that it based its decision on the fact that the search warrant leading to the discovery of the cocaine at the defendant's home had been obtained as a direct result of the investigation into the present case. In Case No. 23-CF-1075, the trial court ruled that the defendant's admission to the drug tactical unit would only be admissible if the defendant testified and directly contradicted his prior statement. The trial court held that if the defendant did not testify, none of the evidence from that case, including the search warrant, the drugs found, or the defendant's statements, would be admissible. And the trial court entirely barred the remainder of their evidence, the defendant's 2017 conviction for unlawful possession of a controlled substance, his 1998 murder conviction, and his 1995 conviction for unlawful possession with intent to deliver a controlled substance. Counsel, regarding the Case No. 25-CF-988 and the court's ruling allowing in certain aspects of that conviction, why would that not be sufficient to establish the relationship with the victim and to establish a motive? Well, in order for all of the evidence the State argued was important in order for the State to establish the motive in this case and to explain the relationship with the defendant and the victim and the defendant's long history of selling drugs. And by introducing all of this evidence, it provides a pattern and a motive in order for the defendant's killing of the victim in this case. And that was the State's theory behind their motion to, or notice of intent to introduce other crimes evidence. This State also, while it's not required to prove motive, it is certainly entitled to do so when that opportunity presents itself. The motive exception actually to the general ban on other crimes evidence arises in the context of other crimes that serve as the motive behind the crime charge. So all of the history that the State wanted to present at this trial just goes, creates a narrative of this defendant's life in the drug trafficking system. The evidence would demonstrate that the defendant had been actively engaged in narcotics distribution for many years, including, and this is critical, around the time of Hudson's murder, as evidenced by the charges and evidence in case number 23 CF 1075 from June 23. Can we, in order not to get too confused, can we stay on these specifically as you've identified them by case number? What is the State's problem with the court's ruling on 25 CF 988? The order says people are permitted to use and provide evidence regarding 25 CF 988 in the execution of a search warrant. And what was found, the existence of a charge is not permitted. Yes. Is it the State's contention that the charge against the defendant should be admitted? Yes. It just shows the pattern of the defendant's long history of drug use and the fact that charges stemmed from the execution of the search warrant is a continuing narrative, which is also part of the exception of the other crimes evidence as if... What I'm saying is the judge just excluded the introduction of the evidence that a charge was made, but not the evidence as a result of the search warrant and what was found. So the State's position is that the charge should be placed before the jury too? Yes, Your Honor. Other crimes evidence is admissible if it is part of a continuing narrative of the event giving rise to the offense intertwined with the charged offense or explains an aspect of the charge that would otherwise be impossible or inexplicable, and that's exactly what the State argued here. For that reason, it's a continuing narrative, and it helps explain things that otherwise might not make sense to a jury why the defendant was at the victim's house at 2.30 in the morning, how they even knew each other, et cetera. What are the standards of review in this case? Is it abuse of discretion? Yes, Your Honor. And it is the State's position that the trial judge did abuse his discretion in this case, as there is ample, ample case law where similar evidence was admitted and properly upheld by the appellate courts and the Supreme Court in situations such as this, exact examples. For example... The majority of these cases are 28 to 30 years old. The murder case is 1998, and the other possession case with intent to deliver is the 1995 case. So that's fairly remote in time, I would say. Yes, but it also establishes just a continuing narrative of this defendant's life and the life that he chose to live as a defendant in the system. So if the judge applies a balancing test, which they're required to do, how do we find an abuse of discretion for throwing out 30-year-old cases? The State believes that it should have been allowed to introduce these cases as other crimes evidence just to, again, show that because it's relevant for any purpose other than for the defendant's propensity to commit a crime. And it's relevant in this case to show that the defendant has a pattern of selling drugs and going to these places at remote times in the middle of the night and warrants being executed, drugs found. That just shows a continuing narrative of the events that led to the charges in this case. Well, I realize they're not exactly the same, but if you're going to impeach someone with a prior felony conviction, you can only go back 10 years. Here we're going back 30 years. It seems pretty far to reach back to prove motive. So I'm not sure how we get over the abuse of discretion when we're looking at that. Well, on three of these, the State argues that they are relevant, but the judge is saying in three of these that the basis for the ruling is weighing the prejudicial value versus the probative value. So it's not really a question of relevancy. The judge has made a determination on, I'll just refer to the dates of these incidents, August 2017, March 1995, and June 1998. The ruling, although it wasn't a lengthy explanation, says on the basis of prejudice versus probative rather than relevance. Yes, Your Honor. And it's the State's position that any possibility of prejudice that might be shown at trial on the victim could be correctly cured with a limiting jury instruction, that the jury may only consider this evidence for its proving of motive and not for the defendant's propensity to commit a crime. And it's for these reasons the State respectfully requests for this Court to reverse the trial court's decision on the basis where it denied the State's use of such evidence. Justice, are there any questions? No other questions, thank you. Justice Hackett? No, thank you. All right, thank you, counsel. Mr. Sullivan, are you ready to proceed? Yes, sir.  Justice Vaughn, Justice Bollinger, Justice Hackett, Office of the State Prosecutor, may it please the Court, counsel on behalf of Antron Duncan. To begin with the facts, what we had before this Court, what we had before the trial court, was a very, very weak, poorly investigated case. There is some video evidence of the defendant in contact with the decedent roughly eight to nine hours before his discovery. What investigators could have done because the decedent would have been continuously on camera from that interaction to the location where he was ultimately found was pulled all of the video, which they failed to do. There is insufficient video. There is no weapon. There are no forensics. There are no witnesses. There are no admissions. This is a fundamentally weak case. So what does the State do? They move to portray Antron Duncan as a career drug dealer and a convicted murderer. Therefore, he must have done it again. And that is the State's tactic here at the trial court. This interlocutory appeal by the State asked the sole question of whether the trial court abused its discretion. And I agree with the State. Justice Wong, the standard here is abusive discretion. By carefully limiting the State's proposed other crimes evidence under 404B, the judge did not abuse its discretion. The Court's ruling reflects a well-reasoned balancing that is entirely consistent with Illinois precedent. At its core, this case involves a fundamental principle of our criminal justice system that other crimes evidence may not be used simply to show that Antron Duncan is a bad person with a propensity to commit crime. And that would be essentially the extent of the evidence the State would be allowed to present at trial. As the Illinois Supreme Court explained in Wilson, the admissibility of other crimes evidence rests within the sound discretion of the trial court and will not be disturbed absent a clear abuse of discretion. And the Court in Childress reaffirmed that such rulings are reviewed for an abuse of discretion and that propensity evidence is particularly dangerous because of its over-persuasive effect on a jury. The danger is not theoretical. As recognized in Thompson v. Pettit, quoting Michelson of the United States, propensity evidence is excluded not because it lacks relevance. And as you observed, the State proceeded beyond relevance to a more prejudicial than probative analysis at the hearing. Isn't the State, though, usually granted a fair amount of leeway in deciding what their reasoning is for offering evidence of other crimes? So if they say this is for motive, don't we give the State a fair amount of leeway if they can link it to motive, that that's acceptable? I don't know if the State is granted leeway, but I think that the State has a number of exceptions within 404B to attempt to persuade the Court to exercise the Court's discretion in their direction. And certainly in this case, as the record reflects, they attempted to do that. And Judge Cruz was attentive, listened. There is an extensive interaction at the hearing. She asked questions. She responded. She entertained arguments from both sides and laid out her reasoning, which I hope to address. Again, because it lacks relevance, this propensity evidence is not excluded for that reason, but because it weighs too much on the jury, risking conviction based on character rather than proof beyond a reasonable doubt, the charged offense. And the trial court here understood that principle and applied it faithfully. We have discussed the standard of review, and here the record demonstrates the opposite of arbitrariness. Judge Cruz conducted a hearing. As I said, she listened to arguments, asked questions, distinguished between different prior acts, and admitted some of the evidence while excluding other evidence as unfairly prejudicial. And that's the hallmark of discretion exercise, not discretion abuse. Frankly, we need more trial judges conducting these hearings as she did. So the court properly excluded the 1995 drug conviction, the 1998 murder conviction, and the 2017 drug conviction. The state sought to admit the 1995 conviction for possession with intent, conducted nearly 30 years ago. The state's theory was that Mr. Duncan's history of drug dealing provided motive for the charged murder, allegedly committed over a drug debt. Well, the trial court rejected that argument, finding that the 1995 conviction, unquote, was merely compound characterization of the defendant rather than meaningfully explained motive. And that conclusion is well within the court's discretion tonight. And the remoteness alone, as this court pointed out, substantially diminishes probative value. And at the same time, the prejudice remains powerful. The court paints Mr. Duncan, as the state hopes to paint him, as nothing more than a career drug dealer and a murderer, which would be the basis of their persuasive argument to a jury at trial rather than hard evidence. As this court explained in Felton, the danger of undue prejudice increases with the accumulation of other crimes evidence. As probative value diminishes, prejudicial effect remains constant, tipping the scale towards exclusion, and that is precisely what the trial court did here. Same with the 1998 murder. There is an extensive record, which she goes and analyzes why this is improper. That the state calls exclusion of a 1998 first-degree murder conviction an abuse of discretion is particularly troubling when the charged offense we're talking about is first-degree murder. Conviction would create an extraordinary risk that the jury would convict because it believes the defendant to be the type of person who commits murder rather than based on the evidence and proof beyond a reasonable doubt. And in Atkinson, which I cite in my brief, the court emphasizes that the trial court must be cautious in admitting prior convictions for the same crime as the charged offense. While similarity doesn't mandate exclusion, it heightens the risk of prejudice and demands careful balancing. The trial court here performed that balancing in great detail. It concluded that the 1998 conviction was unnecessary to explain anything implausible or inexplicable about the state's case. And she noted, in fact, that the state itself had already articulated a coherent theory of motive at the hearing without it. She didn't need that extra conviction to convince her that the motive could be argued to a jury. That ruling is not only reasonable, it's precisely the type of cautious gatekeeping that Atkinson encouraged and, in fact, mandates. The court properly concluded the 2017 conviction. She, on the record, essentially adopts the reasoning from the 95 and the 98 and says, for the same reasons, I'm finding that the prejudicial effect outweighs the probative value, indicating necessarily that a balancing had taken place. Attorney Sullivan, if you don't mind, unfortunately we have time limits on things. I'd like to hear what you have to say about the, I'll call it the June 2023 CF 1075. And, Justice Hackett, as you noticed earlier, all that was excluded was the existence of the charge. Everything else comes in. Introduction of the conduct underlying the 2025 search, regardless of whether the defendant testifies, while prohibiting reference to the mere fact of the charge. Now, with the 2023 case, it's slightly more limited. It's incumbent and, in fact, conditional on whether defendant chooses to exercise his right to testify. If he does that and denies ever having dealt drugs, then the state would be given the opportunity to impeach him with his prior statement. In addition to that, in terms of the court having struck a careful balance, evidence that the search warrants were executed during the present investigation are admitted towards their theory of motive. Evidence that a certain amount of cocaine was found and 16 plastic baggies were found. Well, here's what I was trying to direct your attention to, and I'll do the same thing when Attorney Oswald O'Brien comes back up. But this was a little bit different ruling from the court, and I thought it was not as clearly stated as the ruling on the other. The way I read this is the trial court is saying that the little information on evidence seized is to be admitted, but it will be permitted only if the defendant testifies contrary to evidence. How would you interpret that? I interpret that as they're not to bring it up unless the defendant testifies. If he does then testify and he denies any knowledge of drug sales, then that opens the door to all of it. And that was the exact phrase the court used, opens the door. At that point, the state is free to run rampant with any of that evidence they like. But what's the difference in the 25 and the 23 case? She's allowing the evidence in on 25. How is the 23 different? That only comes in if he testifies. What's the difference? What's the basis for distinction there? So I think the basis for distinction is that this is a calibrated ruling. This is a careful balance struck by the court in order to ensure a fair trial while also preserving the state's ability to pursue its motive and theory of the case or the theory of the case as motive. So aside from other than this highly and unfairly prejudicial information, the state is free to pursue that there is an inference of drug dealing that's going to go in front of the jury. And it was specifically different there. Can we call a DTU officer to say what was found in the 2025 case, to say scales and bags and all those other things were found? And then can we specifically ask the question, is this evidence of drug dealing? And the court said, absolutely. So all of that is coming in. And I believe that answers the question. This carefully tailored ruling is exactly what we need to preserve fair trials and to allow the state to proceed with pursuing evidence of their motive unencumbered. Mr. Farr, any further questions? No, thank you. Justice Hackett? One more, please. But I think what Justice Brown was asking, what's the difference in saying in 20— I'm sorry, I don't want to presuppose I'm clarifying, but clarify for me. In the 2025 case, when basically everything is admitted in the 2023 case, it appears that it will only be admitted if the defendant testifies. So how do we view that? Well, the—my answer to that, Your Honor, would be that the court's role here today is not to decide how it would have ruled on that issue necessarily. However, it's to determine whether the trial court's ruling is one that no reasonable judge could have made. So what's the difference? The judge made a game-time decision in the middle of a contentious hearing where arguments are being made, there are negotiations back and forth on what evidence is coming in and why and the extent to which the State's driving to push their theory of the case forward. The judge is making compromises and yielding position to the State and yielding position to the defense. But what is palpable from the record is that she is trying to preserve the defendant's right to a fair trial and she is trying to protect the State's right to pursue its theory. So, no, they're not identical rulings. She could have made identical rulings, but that's simply not the case here. But the question must remain whether no reasonable person would have done that, whether it was arbitrary or fanciful. And it just simply was not. What instead it reflects is reason itself, compromise, engagement with the parties, and a mediated discussion between all three about how can everybody put their best foot forward at trial. And that's exactly what happened here. So rather than allow the State to proceed with simply a list of prior charges, they're going to characterize the defendant as exactly what propensity evidences are to protect against, just a bad guy with a propensity to do this stuff. I believe she had a carefully measured and tailored set of rulings that aren't necessarily identical, but that accomplish that goal when you zoom out and look at it in macro sense. Thank you. All right. I can't solicit any further questions from counsel. We'll hear rebuttal arguments then. Thank you, counsel. Thank you. All right. Counsel, Alderman O'Brien, are you ready to proceed with the rebuttal argument? Yes. And I know we allowed Mr. Sullivan to go a bit longer with the court's questioning, so unless there's any objection, I can tell you you need an extra minute or two to address these same questions. Any objection to that? No. Then you may do so. Thank you, Your Honor. Thank you, Your Honor. To answer Justice Vong's earlier question about why we should allow or why the trial court should have allowed a case in from 32 cases in from almost 30 years ago, it's relevant because the evidence demonstrates that the defendant had been actively engaged in narcotics distribution for many years, and it shows that pattern from 30 years ago, and it continues to happen year after year after year. Well, why can't you show that same pattern and say we draw the line and we throw out these 30-year-old cases, but 2017, 2023, 2025 come in. Why isn't that enough pattern? Why do we have to reach back 30 years? That's what I'm having trouble accepting, I guess. Well, as Your Honor pointed out earlier, the state is given leeway in situations such as this, and, again, it establishes that if we just limit it to the last 10 years or so, it doesn't show this history of this defendant engaging in the sale of narcotics over years, over years, over years. It establishes a motive in order for the defendant to do what he did in this case, and, again, it also explains things that otherwise the jury might be left not understanding and have questions about that wouldn't be able to get resolved absent the introduction of this evidence for why the defendant even knew this victim. Why would you go kill a random person you don't know? Well, these cases establishes that motive and that narrative telling of events and why it's relevant to the motive and the situation at hand. Courts have consistently found that similar other crimes evidence in other cases are admissible for establishing motive. For example, in People v. Gersow, evidence of the defendant's sales, possession, and use of narcotics was held admissible to explain his motive for killing the victim who had failed to account for his proceeds of drug sales. Exactly the same situation in this case, and it was held admissible there. Also, in People v. Wayland, evidence of the defendant's subsequent purchase and use of cocaine was relevant to show his motive for robbery and murder, exactly why the state wanted to introduce that evidence in this case. It's also relevant to explain the nature of the relationship between the defendant and the victim in the events leading up to the victim's murder. Evidence establishes or tends to establish that the defendant and Hudson had an ongoing dealer-customer relationship arising from the defendant's drug operations. It would also explain why the defendant would be at his residence at an unusual hour, as mentioned, why money was an issue between them, and why the financial dispute would escalate to lethal violence. Something else I wanted to point out. I directed Attorney Sullivan's attention to the ruling by the court on the issue surrounding 23 CF 1075. So if you have any thoughts on that specifically, let me know, please. Let us know, please. Yes, Your Honor. I do agree that I can't read the trial judge's mind in this case. However, I can just speculate, as this court can do as well. It just, to me, seems like the state was giving the defendant a trial strategy, like, don't testify and don't worry, none of this will come in, but if you do, be very careful. Basically telling the defendant, don't say certain things and none of this will come in, whereas in the other case, that wasn't done. So it's confusing why the trial court did what she did. I guess as opposing counsel indicated, she tried to strike a balance and everyone to put their best foot forward and put the best evidence they can on for the jury, but in this case, it's just a little confusing and we are only restricted by the four corners of the record and all we can do is speculate. But I agree, Your Honor. The ruling, the difference in those rulings is a little odd. And the admission to the drug tactical unit officer where the defendant admitted that they had this relationship with the victim in that case of a consignment, I think it was, where he's rented the drugs up front, he has to pay it back later, that's directly relevant to the motive and the, again, the ongoing narrative of this case as to why the defendant was there and what he was doing and his long history of being a drug dealer. And unless Your Honors have any questions, it is for these reasons, the State respectfully requests this Court to overturn those portions of the trial court's order, keeping this evidence out. Any questions, Justice Brown? No questions. Just a second. No, thank you. Thank you, counsel. Thank you. I hope you had a great rest of your day. We will take this matter under advisement and issue an order in due course. Thank you. Members, we're going to unreset.